## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MELVIN BROWN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v.  ) | Case No. 05-cv-420-MJR |
| ) | |
| **DR. CHAPMAN, DR. AHMED and DR.** ) | |
| **TARIQ,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff Melvin Brown filed a Complaint under 42 U.S.C. § 1983 against Defendants, Dr. Chapman, Dr. Ahmed, and Dr. Tariq, on June 13, 2005, alleging violations of his constitutional rights while he was an inmate in the Menard Correctional Center. Brown's Complaint alleges that Dr. Chapman was deliberately indifferent to Brown's serious dental needs, in violation of the Eighth Amendment's ban on cruel and unusual punishment, in connection with the extraction of a tooth and Brown's subsequent development of Bell's palsy. Now before the Court is Dr. Chapman's Motion for Summary Judgment (Doc. 37), which the Court **GRANTS** for the reasons stated below.

### I. SUMMARY OF KEY UNDISPUTED FACTS & ALLEGATIONS

On March 29, 2004, Dr. Chapman, a dentist at Menard Correctional Center, saw Brown for the first time for his biennial examination. Brown complained that he felt pain in one of his teeth, and Dr. Chapman found that Brown's tooth number fifteen, which had a deep filling, was causing pain. During that visit, Dr. Chapman filled the tooth and prescribed pain medication. He advised Brown that the tooth possibly would need to be extracted in the future if the problem did not resolve.

Brown attached to his response to Dr. Chapman's summary judgment motion a grievance dated April 26, 2004, which requests a pass to come to the hospital. Doc. 42-3 at 11. He stated that "something is seriously wrong" and complained that he was experiencing pains in his upper body. *Id*. The "Counselor's Response" section on the grievance is blank, with no response or date received noted. *Id*. Brown also attaches a second grievance, dated May 22, 2004, in which he explains that he did not receive a response to his first grievance and that he is experiencing shooting pains from the nerves in his mouth to his neck, face arms, and ears. Doc. 42-3 at 10. He requests a meeting with the hospital administrator and a call pass to the dentist. *Id*. As with the first grievance, the "Counselor's Response" section is blank, with no response or date received noted. *Id*.

Brown's Offender Outpatient Progress Notes indicate that, on May 30, 2004, Brown was escorted to the health care unit, complaining of a toothache, jaw pain and pain shooting down his left neck and arm. Doc. 37-3 at 6. The medical doctor's entry indicates that Brown complained of tooth pain from a filling he received about a month prior. *Id*. The doctor noted mild swelling and, possibly, although the note is not completely clear, exudates around a left upper molar. *Id*. The doctor diagnosed dental pain, and prescribed pain medication and a follow up with a dentist. *Id*.

On June 1, 2004, Dr. Chapman saw Brown, who complained of a terrible toothache with pus and swelling associated with tooth number fifteen. *Id*. at 1. At that visit, Dr. Chapman prescribed a ten-day course of penicillin for infection, with Tylenol for pain, and scheduled an examination. *Id*.; Doc. 37-3 at 4. Dr. Chapman saw Brown again the following day. *Id*. at 2. Again, the note is not perfectly clear, but it appears that Dr. Chapman found the gum area at tooth number fifteen to be tender to percussion and that he diagnosed or suspected a lesion on the root.

*Id*. Brown was advised to finish his antibiotics. *Id*.

On June 9, 2004, Brown filed a grievance stating that, two months earlier, his dentist had filled his tooth wrong and that it was up against his nerve causing pain to the whole left side of his upper torso, including his left ear. Doc. 42-3 at 9. Brown also stated that he was given medication from the dentist, but that it was not helping and that he wanted to have his tooth pulled, free of charge, "due to the careless mistake done to [him]." *Id*. The "Counselor's Response" section shows that the grievance was received on June 14, 2004, and indicates, "Copy of grievance sent to [health care unit] for their handling. [Inmate] hereby referred to Dental Clinic." *Id*.

On June 11, 2004, the medical unit provided Ibuprofen and Tylenol for Brown's dental pain. Doc. 37-3 at 2, 4. It was also noted on June 11th that Brown "is scheduled," presumably, to have the tooth extracted. *Id*. at 2. On June 21, 2004, Dr. Chapman extracted tooth number fifteen, noting that it was a difficult extraction with four roots present. *Id*. Dr. Chapman prescribed penicillin and Motrin. *Id.* at 4.

Brown asserts that in the months that followed the extraction, he made multiple requests to the hospital administrator to see the dentist, advising of continued pain in his mouth and cheeks. On September 16, 2004, Brown saw a nurse or medical technician who noted that Brown reported pain to his right jaw area with an onset of two weeks earlier. Doc. 42-3 at 7. Following the evaluation, Brown was escorted to Dental. *Id*.

The medical notes on September 16, 2004, indicate that Brown was seen on an emergency referral from a medical technician. Doc. 37-3 at 2. Brown complained of facial pain, an inability to open his mouth, and pain in his tongue, both lips, and cheek region bilaterally. *Id*. Brown also advised that he had experienced symptoms since the tooth extraction but that they had

3

worsened in the previous two weeks. *Id.* On examination, Dr. Chapman noted normal range of motion and no oral pathology. *Id.* Dr. Chapman treated Brown with antibiotics and Ibuprofen, and noted a possible need for a referral to see a physician for a medical evaluation to rule out neurological causes. *Id.* The following day, Dr. Chapman referred Brown to a medical doctor for evaluation after Brown reported no improvement. *Id.* The progress notes provided to the Court do not reflect that Dr. Chapman saw Brown after September 17, 2004.

On September 24, 2004, Brown was evaluated by a medical doctor. Doc. 37-3 at 8. Brown's symptoms included right side facial weakness and decreased sensation for two-and-one-half months plus drooling when drinking liquids. *Id.* On examination the doctor noted decreased motor function and sensation on the right side of the face as well as the angle of the mouth deviating to the left side. *Id.* The diagnosis was possible Bell's palsy. *Id.* Acyclovir and prednisone were prescribed, and Brown was admitted to the infirmary. *Id.*

In Dr. Chapman's affidavit, he states that, in his practice as a dentist, he is aware of no causal link between dental care and the development of Bell's palsy Doc. 37-2 at ¶ 17. He attests that it is his understanding that 1) Bell's palsy is a condition which may occur for no known reason and is not generally attributable to any specific event; 2) Bell's palsy is a neurological condition and not one relating to dental care; 3) he has no information which would indicate that Bell's palsy can be attributable to dental care in any way; and 4) he is aware of no information from any physician who has attributed Brown's Bell's palsy or any development of Bell's palsy to dental care. Doc. 37-2 at ¶¶ 18, 20, 21. Brown, on the other hand, attests in his affidavit that Dr. Chapman's assertion that Bell's palsy "cannot be attributed to dental care or lack thereof is unfounded and highly questionable, and suspect at the least." Doc. 42-3 at ¶ 18.

4

## II. APPLICABLE LEGAL STANDARDS

### A. Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ***Haefling v. United Parcel Service, Inc.*, 169 F.3d 494, 497 (7th Cir. 1999);** ***Dempsey v. Atchison, Topeka and Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994)**. The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. ***Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970);** ***Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999)**. A fact is material if it is outcome determinative under applicable law. ***Hardin v. S. C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999);** ***Smith on behalf of Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997);** ***Estate of Stevens v. City of Green Bay*, 105 F.3d 1169, 1173 (7th Cir. 1997)**.

Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. ***Plair v. E. J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir. 1997);** ***Lawshe v. Simpson*, 16 F.3d 1475, 1478 (7th Cir. 1994);** ***Dempsey*, 16 F.3d at 836.** Finally, summary judgment "will not be defeated simply because motive or intent are involved." ***Roger v. Yellow Freight Systems, Inc.,* 21 F.3d 146, 148 (7th Cir. 1994).** *See also Miller,* 168 F.3d at 312; *Plair,* 105 F.3d at 347; ***Hong v. Children's Memorial Hospital*, 993 F.2d 1257, 1261 (7th Cir. 1993);** ***Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 991 F.2d 1249, 1258 (7th Cir. 1993)**.

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. . . . [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  See also, *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986); *Haefling,* 169 F.3d at 497-98; *Sybron Transition Corp. v. Security Ins. Co. of Hartford*, 107 F.3d 1250, 1255 (7th Cir. 1997); *Weinberger v. State of Wis.*, 105 F.3d 1182, 1188 (7th Cir. 1997)**.

**B.      Deliberate Indifference to Serious Medical Need**

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. ***Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994)**.  This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." ***Estelle*, 429 U.S. at 106**.  ***See also Jones v. Simek*, 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi,* 82 F.3d 175, 178 (7th Cir. 1996), cert. denied, 519 U.S. 897 (1996)**.

> A prisoner raising an Eighth Amendment claim against a prison official therefore must satisfy two requirements. The first one is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer,* 511 U.S. at [834], 114 S.Ct. at 1977. As the Court explained in *Farmer*, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.*  The second requirement is a subjective one:  "[A] prison official must have a 'sufficiently culpable state of mind,'" one that the Court has defined as

"deliberate indifference." *Id*; *see Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) ("[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'").

***Vance v. Peters*, 97 F.3d 987, 991-992 (7th Cir. 1996), cert. denied, 520 U.S. 1230 (1997)**. However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer*, 511 U.S. at 842.

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. "Neglect of a prisoner's health becomes a violation of the Eighth Amendment only if the prison official named as defendant is deliberately indifferent to the prisoner's health - that is, only if he 'knows of and disregards an excessive risk to inmate health or safety.'" ***Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir. 1995), cert. denied, 516 U.S. 993 (1995);** *see also Steele*, **82 F.3d at 179 (concluding there was insufficient evidence of doctor's knowledge of serious medical risk or of his deliberate indifference to that risk; emphasizing that even malpractice is not enough proof under** *Farmer*); *Miller v. Neathery*, **52 F.3d 634, 638-**

7

**39 (7th Cir. 1995) (applying *Farmer* mandate in jury instruction)**. However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur. *Haley v. Gross*, **86 F.3d 630, 641 (7th Cir. 1996)**.

### III. ANALYSIS

Dr. Chapman argues that he is entitled to summary judgment because 1) Brown failed to exhaust his administrative remedies; 2) Brown has no evidence to suggest that Dr. Chapman acted with deliberate indifference; 3) Brown has not provided evidence to establish that the deprivation he alleges that he suffered is, objectively, sufficiently serious; and 4) he is entitled to qualified immunity if any of his actions were to be found unlawful. The Court need address only the first two of these arguments.

#### A. Administrative Exhaustion

Dr. Chapman argues that Brown failed to exhaust completely his administrative remedies, alleging that Brown did not submit any grievances in accordance with the administrative grievance system regarding his dental treatment. In response, Brown states that he submitted grievances on April 26, 2004, May 22, 2004, and June 9, 2004, and attaches copies of these grievances to his response. Brown maintains that he should not be held to have failed to exhaust his administrative remedies because prison officials failed to respond to his first two grievances.

Brown must exhaust only those administrative remedies that are available to him. *See* **42 U.S.C. § 1997e(a);** *Lewis v. Washington*, **300 F.3d 829, 835 (7th Cir. 2002);** *Johnson v. Litscher*, **260 F.3d 826, 829 (7th Cir. 2001)**. The Seventh Circuit holds that "administrative remedies [are] exhausted when prison officials fail to respond to inmate grievances because those remedies had become 'unavailable.'" *Brengettcy v. Horton*, **423 F.3d 674, 682 (7th Cir. 2005)**

**(citing *Lewis v. Washington*, 300 F.3d 829, 835 (7th Cir. 2002) ("we refuse to interpret the PLRA so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances."))**. Here, Brown alleges that he did not receive a response to the first two grievances he filed, which alleged that "something is seriously wrong" because of his dental treatment. A question of material fact exists regarding whether Brown exhausted his administrative remedies, and summary judgment is, therefore, not appropriate on this issue.

      B.     **Deliberate Indifference**

Dr. Chapman argues that summary judgment is appropriate because Brown has failed to produce evidence from which a reasonable jury could find that Dr. Chapman acted with deliberate indifference to his serious dental needs. For Brown to survive summary judgment, he must set forth evidence of Dr. Chapman's actual knowledge of, or reckless disregard for, a substantial risk of harm to him. *See Farmer*, **511 U.S. at 842**.

Brown claims that Dr. Chapman is responsible for his developing Bell's palsy because of the "treatment or lack of treatment provided . . . from March of 2004 through September of 2004." Doc. 42-2 at 1. According to Brown, Dr. Chapman was deliberately indifferent because he did not extract Brown's tooth until June 21, 2004, which is a little less than three months after he first visited Dr. Chapman complaining of pain in his tooth on March 29, 2004. Brown states that Dr. Chapman "knew or should have known that the lack of treatment after a bothched [sic] filling could create a medical emergency," and that "due to the (3) month delay in receiving medical assistance [he] developed Palsy." Doc. 42-2 at 4-5.

9

Dr. Chapman, however, states that this was a reasonable amount of time in which to address Brown's condition, arguing that Brown's complaints concerning his tooth were addressed with medications prior to extracting the tooth in an effort to save the tooth, but, ultimately, extraction became necessary. Dr. Chapman further states that he is aware of no causal link between dental care and the development of Bell's palsy, which he understands to be a neurological condition which may occur for no known reason and that has not been attributed to dental care. Brown responds that such conclusions are "unfounded and highly questionable, and suspect at the least." Doc. 42-3 at ¶ 18. Brown also argues that Dr. Chapman "deliberately either would not treat me consciously or that he was 'unaware' of how he should have treated the dental care. Either way his actions were deliberate causing serious damage . . . that resulted in Palsy." Doc. 42-2 at 8.

Having carefully examined the record before it, this Court finds that Brown has not provided sufficient evidence or factual allegations that would allow a reasonable jury to find in his favor and against Dr. Chapman. Brown has failed to provide evidence that Dr. Chapman knew of and disregarded an excessive risk to his health or safety, which is required to make a submissible case of deliberate indifference. **Williams, 55 F.3d at 324**. The record demonstrates that Dr. Chapman took immediate action to treat Brown's tooth by filling it on the same day that Brown first complained of pain to Dr. Chapman. Dr. Chapman then prescribed pain medication and informed Brown that he would possibly have to have the tooth extracted in the future. Approximately one month later, Dr. Chapman observed that an infection had developed, and prescribed an antibiotic and more pain medication. Dr. Chapman also scheduled Brown for an examination the following day, at which time he instructed Brown that he needed to complete his antibiotics before further

treatment could be rendered. Nineteen days later, Dr. Chapman performed the difficult tooth extraction.

Brown's dissatisfaction with Dr. Chapman's course of treatment is not enough to establish deliberate indifference. *See Snipes v. DeTella*, **95 F.3d 586, 592 (7th Cir. 1996)**. "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Id*. "A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition.'" *Id***. (quoting *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir.1974), vacated and remanded on other grounds sub nom.** *Cannon v. Thomas***, 419 U.S. 813 (1974)**.

Dr. Chapman attempted to treat Brown's tooth first with a filling, and later with antibiotics, before ultimately extracting the tooth. Brown disagrees with this course of treatment and claims that Dr. Chapman caused his Bell's palsy by not extracting his tooth sooner. Brown provides nothing more than his opinion that his palsy was caused by Dr. Chapman's course of treatment. Even if the Court were to find a pattern of negligent acts that amounted to malpractice, which it does not, ". . . evidence of repeated acts of [] malpractice, without more, could not constitute deliberate indifference." *Williams v. O'Leary,* **55 F.3d 320, 324 (7th Cir. 1995) (citing** *Estelle***, 429 U.S. at 106)**.

Brown must establish that Dr. Chapman knew of and disregarded an excessive risk to his health or safety. *See id.* This Brown has failed to do. There is no evidence to suggest that Dr. Chapman knew of or disregarded the risk that his course of treatment would, or even could,

11

cause Brown to develop Bell's palsy. The evidence demonstrates that Dr. Chapman saw and treated Brown on four separate occasions during the twelve-week period beginning with Brown's initial complaint of pain. Brown has provided no evidence which tends to show that Dr. Chapman either ignored him, refused to see him, or delayed his treatment in any way. Simply put, based on the evidence currently before the Court, no reasonable jury could find in Brown's favor.

Because the Court finds in favor of Dr. Chapman on this issue, it is not necessary to address whether Brown's alleged deprivation was sufficiently serious to raise an Eighth Amendment claim or whether Dr. Chapman is entitled to qualified immunity.

## VI. CONCLUSION

For all these reasons, the Court **GRANTS** Defendant Chapman's Motion for Summary Judgment (Doc. 37) and Orders that Defendant Chapman be **DISMISSED** from this action.

**IT IS SO ORDERED.**

**DATED this 27th day of September, 2007**

s/Michael J. Reagan
**MICHAEL J. REAGAN**
**United States District Judge**